**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLIED PROGRESS,<br>    *Plaintiff*,<br>    v.<br>CONSUMER FINANCIAL<br>PROTECTION BUREAU,<br>    *Defendant*. | Civil Action No. 17-686 (CKK) |

**MEMORANDUM OPINION**
(May 4, 2017)

Pending before the Court is Plaintiff Allied Progress' Motion for a Temporary Restraining Order and Preliminary Injunction, *see* ECF No. 2 ("TRO Motion"), which seeks both a temporary restraining order and preliminary injunction mandating expedited processing and production of certain materials from Defendant Consumer Financial Protection Bureau ("CFPB") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of the pending motion, the Court concludes that none of the preliminary injunction factors weigh in favor of granting injunctive relief in this matter. Accordingly, the Court **DENIES** both Plaintiff's request for a temporary restraining order, and its request for a preliminary injunction, as the legal and evidentiary bases for both requests are identical.

---

[1] The Court's consideration has focused on:

- Pl.'s Mem. in Supp. of Mot. for a Temporary Restraining Order and Prelim. Inj., ECF No. 2-1 ("TRO Mot.");
- Def.'s Mem. in Opp'n to Pl.'s Mot. for a Temporary Restraining Order and Prelim. Inj., ECF No. 7 ("Opp'n Mem.");
- Pl.'s Reply to Def.'s Mem. in Opp'n to Pl.'s Mot. for a Temporary Restraining Order and Prelim. Inj., ECF No. 8 ("Reply Mem.").

# I. BACKGROUND

The instant motion is predicated on potential Congressional action on regulations promulgated by CFPB, collectively known as the "Prepaid Rule," which were intended to provide "comprehensive consumer protections for prepaid financial products." TRO Mot. at 1; Opp'n Mem. at 2. Assuming it comes to pass, this Congressional action would be taken pursuant to the Congressional Review Act ("CRA"), 5 U.S.C. §§ 801-808, which permits Congress to quash agency regulations within a slated time period. The parties agree that the deadline for Congress to overrule the Prepaid Rule via the CRA is May 9, 2017. Opp'n Mem. at 3.

Plaintiff initially submitted two FOIA requests to CFPB regarding the Prepaid Rule on April 6, 2017, both of which sought expedited processing. Decl. of Raynell Lazier, ECF No. 7-1, ¶ 8. Expedited processing of these requests was denied on April 6 and April 7, 2017, respectively. *Id*. ¶ 9. On April 12, 2017, Plaintiff withdrew these requests, and submitted the FOIA requests at issue in this matter (the "FOIA Requests"). *Id*. ¶ 10; Decl. of Karl Frisch, ECF No. 2-2., ¶ 3. In those, Plaintiff requested expedited processing "of all correspondence between, involving and including representatives of the CFPB and any of twelve listed U.S. Senators, or their representatives since December 1, 2014 concerning . . . the Prepaid Rule," and of "all correspondence since December 1, 2014 between, involving, and including representatives of the named staff at the CFPB . . . and any of a number of named [private] individuals and entities or their representatives concerning" the Prepaid Rule. *Id*. ¶¶ 3, 5; *see* TRO Mot., Exs. 1, 2.

On the same day, April 12, 2017, CFPB denied Plaintiff's requests for expedited processing, asserting that Plaintiff's FOIA Requests did not qualify under either of the two categories recognized by CFPB for granting expedited treatment. TRO Mot., Exs. 3, 4.

Nonetheless, the agency proceeded with non-expedited processing of the FOIA Requests. Decl. of Raynell Lazier, ECF No. 7-1, ¶ 12. Subsequently, Plaintiff chose not to request an administrative appeal of CFPB's determination regarding expedited processing, and on April 18, 2017, filed this action and the pending TRO Motion.

## II. LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis,* 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

The Court notes that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. US. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

### III. DISCUSSION

The Court proceeds by assessing each of the preliminary injunction factors in turn. For the reasons stated, the Court concludes that Plaintiff has failed to establish its likelihood of success on the merits, or that it will be irreparably harmed, and finds that the public interests and equities are in equipoise. Consequently, Plaintiff's request for injunctive relief shall be denied.

A. Likelihood of Success on the Merits

The Electronic Freedom of Information Act Amendments of 1996 ("1996 Amendments") created a procedure by which applicants could obtain expedited processing of their FOIA requests upon a showing of a compelling need for the requested materials. The pertinent statutory language provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i).

"Compelling need" is defined by the FOIA statute to encompass the following circumstances:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(A)(6)(E)(v). As contemplated by the 1996 Amendments, CFPB has published regulations implementing its administration of expedited processing requests. Those regulations, like the FOIA statute, provide for expedited processing to the extent the applicant can demonstrate a "compelling need" for the materials, which is defined by the CFPB as follows:

> (i) Failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. The requester shall fully explain the circumstances warranting such an expected threat so that the CFPB may make a reasoned determination that a delay in obtaining the requested records could pose such a threat; or
>
> (ii) With respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal government activity. A person "primarily engaged in disseminating information" does not include individuals who are engaged only incidentally in the dissemination of information. The standard of "urgency to inform" requires that the records requested pertain to a matter of current exigency to the American public and that delaying a response to a request for records would compromise a significant recognized interest to and throughout the American general public. The requester must adequately explain the matter or activity and why the records sought are necessary to be provided on an expedited basis.

12 C.F.R. §§ 1070.17(a), (b)(2).

FOIA provides for direct judicial review of an agency's denial of expedited processing, meaning that Plaintiff was not required to pursue an administrative appeal, and consequently has exhausted his administrative remedies, as the government concedes. 5 U.S.C. § 552(a)(6)(E)(iii); Opp'n Mem. at 6 n.1. Judicial review must be conducted *de novo*, but is limited to an analysis of

5

the administrative record before the agency at the time it denied the request for expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii) ("judicial review shall be based on the record before the agency at the time of the determination"); *Al-Fayed v. C.I.A.*, 254 F.3d 300, 305 (D.C. Cir. 2001) (concluding that *de novo* standard of review applied based on the cross-reference in section 552(a)(6)(E)(iii) to section 552(a)(4)(B), which provides for *de novo* review of agency decisions to withhold materials). The burden rests with the requester to demonstrate its entitlement to expedited processing. *Al-Fayed*, 254 F.3d at 305 n. 4.

Plaintiff here seeks expedited processing based on the second exception provided for by both the FOIA statute and CFPB regulations. Consequently, to establish that it has a likelihood of success on the merits, Plaintiff must show that: (i) it is a person primarily engaged in information dissemination; (ii) the FOIA requests at issue involve a matter with respect to which there is an urgency to inform the public; and (iii) the matter concerns actual or alleged Federal government activity. There is no disagreement that the FOIA requests concern a Federal government activity— the pending Congressional action with respect to the Prepaid Rule—and as such, only the first two elements are at issue. The Court assesses each in turn, and finds that Plaintiff has failed to establish a likelihood of success on either element.

*1. Person Primarily Engaged in Disseminating Information*

The legislative history associated with the 1996 Amendments indicates that "a person primarily engaged in disseminating information"

> should not include individuals who are engaged only *incidentally* in the dissemination of information. The standard of 'primarily engaged' requires that information dissemination be the *main activity* of the requestor, although it need not be their sole occupation. A requestor who only incidentally engages in information dissemination . . . would not satisfy this requirement.

6

*Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 276 (D.D.C. 2012) (emphasis and alterations in original) (citing H.R. Rep. No. 104–795, at 26 (1996)). The pertinent CFPB regulations likewise provide that "[a] person 'primarily engaged in disseminating information' does not include individuals who are engaged only *incidentally* in the dissemination of information." 12 C.F.R. § 1070.17(b)(2)(ii) (emphasis added).[2] In *Al-Fayed*, the D.C. Circuit examined the legislative history behind the provision for expedited processing, and found that, as "an overarching principle, . . . the specified categories for compelling need are intended to be narrowly applied." 254 F.3d at 310 (internal quotation marks and alterations omitted). The D.C. Circuit also emphasized the Congressional concern for the finite resources available to agencies responding to FOIA requests, and "the possibility that overuse of the expedited process would unfairly disadvantage other requesters." *Landmark*, 910 F. Supp. 2d at 275 (citing *Al-Fayed*, 254 F.3d at 310). Although courts in this Circuit and elsewhere have routinely held that media organizations and newspapers qualify under this category, in light of the pertinent legislative history, other types of organizations have been held to not qualify, unless information dissemination is also their main activity, and not merely incidental to other activities that are their actual, core purpose. *See Id.* at 276 (concluding that public interest law firm did not qualify as primarily engaged in information dissemination, and noting that a "contrary reading of the statutory requirement would allow nearly any organization with a website, newsletter, or other information distribution channel to qualify as primarily engaged in disseminating information"); *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, No. 16-CV-387

---

[2] Because "compelling need" is a term defined by the FOIA statute and consequently applied across multiple federal agencies, the CFPB's own definition of this term and its constituent parts is not controlling. *Al-Fayed*, 254 F.3d at 307. Nonetheless, the Court cites the CFPB regulations as evidence of the significance of the above-referenced legislative history.

(KBF), 2017 WL 746444, at *5 (S.D.N.Y. Feb. 17, 2017) (public interest organizations did not qualify despite operating websites "that received many visits"); *Treatment Action Grp. v. Food & Drug Admin. & Dep't of Health & Human Servs.*, No. 15-CV-976 (VAB), 2016 WL 5171987, at *8 (D. Conn. Sept. 20, 2016); *Am. Civil Liberties Union of N. California v. Dep't of Justice*, No. C 04-4447 PJH, 2005 WL 588354, at *8, *14 (N.D. Cal. Mar. 11, 2005) (finding that there was no showing that information dissemination was a main activity of the ACLU, even though it "sends out a bi-monthly newsletter to 40,000 people, maintains a website, and issues right-to-know documents, press releases, brochures, and pamphlets on civil liberties"); *cf. Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (concluding that Plaintiff was primarily engaged in information dissemination because its "mission is to serve as the site of record for relevant and up-to-the minute civil rights news and information").

As already noted, the Court's determination of whether Plaintiff qualifies as a person primarily engaged in information dissemination is based solely on the record before the CFPB at the time it denied Plaintiff's request for expedited processing. That record consists solely of the FOIA Requests themselves, which Plaintiff tacitly acknowledges in its Reply by only referencing those FOIA Requests to support its qualifications under this provision. Reply Mem. at 3. However, the only indicia in the FOIA Requests as to Plaintiff's involvement in information dissemination is the following statement: "Allied Progress will use the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. Allied Progress will also make materials it gathers available on our public website." TRO Mot., Ex. 1, at 2; Ex. 2., at 3. This statement does not appear under the section entitled "Application for Expedited Processing," but rather as part of Plaintiff's fee waiver request. Nevertheless, Plaintiff claims that the statement "clearly expresses plaintiff's primary engagement as disseminating information so that it can fulfill

its mission." Reply Mem. at 3. From the Court's perspective, however, neither the statement nor anything else in the FOIA Requests describe *any of* Plaintiff's activities, let alone indicate that information disseminate is its "main activity." At most, the statement relays Plaintiff's intentions with respect to the materials that it seeks to obtain via the FOIA Requests. But even the statutory language plainly speaks to the general type of activity in which the requestor is "primarily engaged," and not merely what the requestor will do in the future. Were a statement of the type proffered by Plaintiff to suffice, then *any* type of organization could qualify under the statute by merely representing that it intended to engage in information dissemination with respect to the fruits of its FOIA request. That result is at odds with the plain language of the statute, the pertinent legislate history, and the case law recounted above. Accordingly, the Court has no difficulty in concluding that, based on the record under review, Plaintiff has failed to establish that it is a person primarily engaged in information dissemination. As such, Plaintiff has also failed to establish its likelihood of success on the merits with respect to its request for expedited processing.[3]

*2. Urgency to Inform*

Because Plaintiff is not a person primarily engaged in information dissemination, it cannot show a likelihood of success with respect to expedited processing regardless of whether its FOIA Requests concern a matter of public urgency. Nonetheless, the Court is doubtful that Plaintiff could succeed on this basis either. As above, the Court emphasizes that its review is limited to the record before the CFPB, and consequently, to the content of the FOIA Requests. Three factors are

---

[3] Although Plaintiff references the APA in its Complaint, *see* ECF No. 1, ¶ 2, it does not contend in its briefing of the TRO Motion that the APA could somehow warrant expedited processing in this matter, or that it otherwise affects the Court's analysis of the preliminary injunction factors. In any event, courts in the D.C. Circuit "have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA . . . ." *Cause of Action Inst. v. Eggleston*, No. CV 16-871 (CKK), 2016 WL 7243518, at *8 (D.D.C. Dec. 15, 2016) (Kollar-Kotelly, J.). As such, Plaintiff's allusion to the APA does not alter in any way the Court's analysis of the pending motion.

pertinent to assessing whether there is an urgency to inform: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id*. (quoting H.R. Rep. No. 104–795, at 26 (1996)).

Plaintiff's FOIA Requests indicate that they are predicated on "the urgent public need to understand the decision-making process behind the [Prepaid Rule], and elected representatives' roles in that process . . . ." TRO Mot., Ex. 1, at 2; Ex. 2., at 2. The FOIA Requests also cite to two media reports regarding the potential Congressional action on the Prepaid Rule; in particular, an op-ed by Senator David Perdue and Representative Roger Williams, "in which they said they are 'using the CRA . . . concurrently in the House and Senate to push for an end to the Prepaid Card Rule,'" and a CNBC report, which stated that the "'deadline for introducing any new CRA resolutions' had already passed and legislators 'must complete voting on resolutions already in the legislative pipeline by mid-May.'" *Id*. Nonetheless, the record is devoid of any evidence regarding whether the Prepaid Rule, or Congressional action with respect to the Prepaid Rule, is a matter of "current exigency to the American public." The two media reports cited by Plaintiff do nothing to elevate the Prepaid Rule above any other law or regulation that is currently subject to potential Congressional action; they say nothing above the degree to which anyone other than Plaintiff has expressed interest in the fate of the Prepaid Rule. That is not to say that the Prepaid Rule is not important, and indeed, the Court in no way concludes that there is not in reality substantial public interest in the Prepaid Rule. Rather, the Court merely finds that the current record, which it was Plaintiff's burden to develop, does not provide any evidence of this public interest. Consequently,

the Court cannot conclude that Plaintiff has a likelihood of establishing that its FOIA Requests concern a matter of which there is an urgency to inform the public. *See Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013) (noting that courts have found a "'compelling need' to exist when the subject matter of the request was central to a pressing issue of the day, such as public debate over the renewal of the USA PATRIOT Act," but concluding that the "controversy that [plaintiff] suggests exists . . . bears no resemblance to these matters of genuine widespread public concern").

B. Irreparable Harm

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985). Chief among them is that "the injury must be both certain and great; it must be actual and not theoretical." *Id*. Here, Plaintiff contends that any further delay in granting expedited processing will constitute irreparable harm, as the "very nature of the right that plaintiff seeks to vindicate in this action—expedited processing—depends upon timeliness," TRO Mot. at 10–11, and that absent disclosure of the records it seeks through the FOIA Requests, its "ability to engage in an urgent and current public policy debate will be irretrievably lost," *id*. at 11; Reply Mem. at 5.

Although a "plaintiff's desire to have its case decided in an expedited fashion . . . is insufficient to constitute [] irreparable harm," the time-sensitive nature of a FOIA request may suffice to meet this standard. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007). Consequently, a number of courts in this Circuit have held that, where a request for expedited processing seeks information that is pertinent to an impending event of public

11

concern, denial of expedited processing may constitute irreparable harm. *See Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (*EPIC I*) (finding that plaintiff would be irreparably harmed because it would be "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program").

Nonetheless, courts in this Circuit have also recognized that simply because a request for expedited treatment is "time-sensitive," does not mean that, *ipso facto*, failing to grant injunctive relief mandating expedited processing would lead to irreparable harm. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (*EPIC II*) ("[w]hile it is true that some courts have granted preliminary injunctions where 'time is of the essence,' . . . surely [plaintiff's] own subjective view of what qualifies as 'timely' processing is not, and cannot be, the standard that governs this Court's evaluation of irreparable harm"); *Landmark*, 910 F. Supp. 2d at 278 ("where the plaintiff has not met the requirements for expedited processing, and where the agency has stated that it will complete processing of the request by the end of next month, the Court finds it difficult to conclude that denial of a preliminary injunction motion will result in irreparable harm"). As noted above, in order to establish irreparable harm, Plaintiff must show that, absent an injunction, it would suffer harm that is both "great" and not "theoretical." Plaintiff, however, has failed to demonstrate that there is substantial public interest in the records sought via the FOIA requests, such that a delay in the release of those records would cause harm that is sufficiently

"great" to constitute irreparable harm. *Sai v. Transportation Sec. Admin.*, 54 F. Supp. 3d 5, 11 (D.D.C. 2014) (declining to find irreparable harm in part because plaintiff had not demonstrated that the requested records would be "vital to any current and ongoing debate" (internal quotation marks and alteration omitted) (citing *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 101 (D.D.C. 2004) ("Fatal to EPIC's request for expedited treatment is the failure in its original FOIA to demonstrate that there is any current public interest *in the specific subject of that request*." (emphasis added)))). Plaintiff has not explained why the specific records sought via the FOIA Requests are crucial to the alleged public debate over the Prepaid Rule,[4] nor has Plaintiff, for the reasons stated in the preceding section, proffered credible evidence that the public is actually engaged in such a debate. *See Wadelton*, 941 F. Supp. 2d at 124 (in review of request for expedited processing, declining to find irreparable harm because plaintiff's "arguments regarding the irreparable injury prong [were] essentially the same as their arguments for compelling need"). Accordingly, the Court cannot conclude that the harm stemming from not granting the TRO Motion would be both certain and great, and consequently, Plaintiff has not met its burden of demonstrating irreparable harm.

C. Public Policy and Balance of Equities

The parties' positions regarding public policy and the balance of equities are in equipoise. There is, undoubtedly, a strong public interest in expeditiously processing meritorious FOIA

---

[4] Plaintiff's most substantive statement on this topic is that "it is clear that the subject of the requests is in the public interest as the information allows the public to see those who are attempting to influence the government's policymaking process concerning the prepaid rule are and what steps they are taking to do so." Reply Mem. at 4. Even then, however, Plaintiff does not, for example, explain in any way why the public officials and other individuals listed in the FOIA Requests are pertinent to the alleged public debate over the Prepaid Rule; why they were likely to be corresponding with the CFPB; and what Plaintiff believes that correspondence could show that would be of relevance and that is not already available in the public sphere.

13

requests. *See Landmark*, 910 F. Supp. 2d at 279; *EPIC I*, 416 F. Supp. 2d at 42. Moreover, the D.C. Circuit has recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977). Nevertheless, two important countervailing interests exist under the circumstances of this case. First, while the public has an interest in expeditious processing of FOIA requests, it likewise has an interest in ensuring that only non-exempt materials are released, and consequently, that agencies have sufficient time to review materials before they are produced. *See Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 15 (D.D.C. 2015). Second, and as recognized in *Al-Fayed*, given the finite resources available to agencies, for every FOIA request that is expedited, another one must be moved back in the queue. Consequently, expediting FOIA requests is not an end in itself, as it means that either some requests are merely put ahead of others, or that expedited processing is rendered meaningless, as expediting all requests is tantamount to expediting none. *Id.* at 15 ("diverting resources to accelerate processing of the plaintiff's request necessarily will redound to the detriment of other requesters, many of whom submitted their expedited request[s] earlier than the plaintiff"). Here, where Plaintiff has not provided credible evidence of a significant public debate over the subject of the FOIA Requests, the Court cannot conclude that the public interest is best served by directing resources toward Plaintiff's requests, and away from others.

With respect to the equities, the burden of expediting Plaintiff's requests is seemingly small—a matter of two days, as based on the current CFPB estimates, ordinary processing would result in the production of non-exempt materials by May 10, 2017, while expedition would result

in such production by May 8, 2017.[5] Decl. of Raynell Lazier, ECF No. 7-1, ¶ 14. Nevertheless, given that the CFPB's FOIA office is staffed by only 5 individuals, who process all FOIA requests received by the agency, *id*. ¶ 5, and that the dates provided are merely estimates that could change as the review progresses, the Court is mindful that ordering production by a date-certain would impugn the two interests noted above; namely, the interest in ensuring that agencies have sufficient time to review materials for responsiveness and exemptions,[6] and the interest of other third-parties in not having their FOIA requests bumped down in the queue and consequently delayed.

Moreover, Plaintiff does not come before this Court with clean hands. Plaintiff first filed FOIA requests related to the Prepaid Rule on April 6, 2017. Expedited processing for both of those initial requests was denied by April 7, 2017, yet Plaintiff took no further action until April 12, 2017, when it filed the requests underlying this action. Then, when expedited processing of those requests was denied on the same day, Plaintiff waited until April 18, 2017 to file this action and the TRO Motion, even though judicial review was immediately available. *See supra* at 2. Furthermore, Defendant relays that the pertinent Congressional legislation at issue in this matter was introduced on February 1, 2017, over two months before Plaintiff filed its initial requests with the CFPB. Opp'n Mem. at 14 (citing Yuka Hayashi, Republicans Introduce Resolution to Kill CFPB's Prepaid-Card Rule, WALL ST. J. (Feb. 2, 2017, 6:55 PM)). Had any one of delays been avoided, under the current estimates provide by CFPB, Plaintiff would have received, via non-

---

[5] The Court notes that, as of the date of this Memorandum Opinion, Congress is expected to be in recess beginning on May 6, 2017, meaning that even expedited processing would have been unlikely to result in the production of documents before Congress took action on the Prepaid Rule.

[6] In this case, CFPB represents that although it has "identified roughly 5,100 documents that may be responsive to Plaintiff's two requests," the agency expects that "further review will significantly narrow the number of documents that are actually responsive to the request." Decl. of Raynell Lazier, ECF No. 7-1, ¶ 14.

expedited processing, the documents sought via the FOIA Requests before the May 9, 2017 deadline for Congressional action. Plaintiff has not justified any of these delays, and consequently, the weight afforded to its claimed burden is necessarily lessened. Accordingly, for this reason and the others already stated, the Court concludes that the public interest and balance of equities factors are in equipoise.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff has not demonstrated that any of the preliminary injunction factors weigh in favor of granting a temporary restraining order or a preliminary injunction in this matter. Accordingly, the Court **DENIES** Plaintiff's [2] Motion for a Temporary Restraining Order and **DENIES** Plaintiff's [2] Motion for a Preliminary Injunction.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 4, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge